### 38722. MONROE v. THE STATE.
### 38723. TALEBI-NEGAD v. THE STATE.

GREGORY, Justice.

Defendants were tried jointly and convicted of "deliberately defacing and defiling the flag of the United States by burning it." Code Ann. § 26-2803. The case is before us on a constitutional challenge to this code section.

On November 29, 1979 two officers from the City of Atlanta Police Department were dispatched to the federal courthouse on Forsyth Street to observe a demonstration by the Iranian Student Association and the Revolutionary Communist Party "against the United State's involvement in Iranian affairs."[1] Trial testimony by these officers indicated that from their parked patrol car they observed a number of persons peacefully picketing and, in turn, making speeches. During this time the officers were approached by

---

[1] Due to the sensitive nature of United States-Iran relations at this time, law enforcement officials were concerned that the demonstration might provoke a public outburst. The officers were dispatched to ensure the demonstration was permitted to proceed in an orderly fashion.

Reuben Garland, a local attorney, who expressed his desire to press charges against the group. The officers testified that while they were discussing this matter with Mr. Garland they observed the defendants unfurl a United States flag. Defendant Monroe ignited the flag with a cigarette lighter, but the flame went out. Defendant Negad then took the lighter from Monroe and ignited the flag. When Garland observed these proceedings he ran into the crowd of demonstrators and began struggling for control of the flag. At that point police officers attempted to disperse the demonstrators and extinguish the burning flag.

Each defendant maintained he had not ignited the flag, but that it had been burned by some person unknown to him.

1. Prior to trial defendants moved to quash the accusations against them on the ground that Code Ann. § 26-2803 is unconstitutional. The trial court denied their motions.

(a) Defendants first argue that the act of burning the flag is symbolic speech which is entitled to protection under the First Amendment of the United States Constitution.

The applicable portion of Code Ann. § 26-2803 provides: "A person who deliberately mutilates, defaces or defiles the flag of the United States . . . is guilty of a misdemeanor." On its face the statute purports only to regulate conduct. We agree with defendants, however, that the act of burning a flag may carry with it communicative aspects which would incidentally be regulated by the statute's prohibition. It is clear from the record in this case that defendants' participation in burning the United States flag was intended to convey a message of displeasure with alleged American activities in Iran. While the communicative element of defendants' conduct may be sufficient to bring it within the ambit of First Amendment analysis, it does not necessarily follow that their conduct will be entitled to the protections that Amendment affords free speech. "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." United States v. O'Brien, 391 U. S. 367, 376 (88 SC 1673, 20 LE2d 672) (1968). Under these circumstances, "a governmental regulation is justified [(1)] if it is within the constitutional power of the Government; [(2)] if it furthers an important or substantial governmental interest; [(3)] if the governmental interest is unrelated to the suppression of free expression; and [(4)] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." Id. at 377.

Defendants do not contest the State's authority to adopt a policy

which protects the integrity of the United States flag. While conceding the State's power to adopt such a policy, however, defendants nonetheless contend that the governmental interest underlying the policy is not so substantial as to justify regulating the proscribed conduct with which they are charged. We do not agree.

For over two hundred years the United States flag has played a significant role in the human affairs of this country. It is symbolic of the ideology of our nation. The flag is our representative emblem of the union of the states and the independence of the country. It is clear that the people of this state and of the other states of the Union have a unique and compelling interest in protecting the flag as the symbol of our nation. What may not be as readily apparent is that the public's interest lies in *having* a symbol to represent the nation. This symbol belongs collectively to the people of the various states. While it is true that a physical reproduction of the symbol in the form of red, white and blue cloth may be privately purchased and owned, that which the flag represents is not subject to private ownership. We recognize that the people of this state have a substantial interest in protecting the symbol; this interest extends to regulating conduct which seeks to destroy the symbol by destroying copies of it. In enacting Code Ann. § 26-2803 the people, through their governmental representatives, have expressed their desire to safeguard the flag and all that it represents. See generally, Joyce v. United States, 454 F2d 971 (D. C. Cir. 1971), cert. den. 405 U. S. 969 (1972).

Further, we find that this public interest and the method by which the statute facilitates it are unrelated to the suppression of free expression. The purpose underlying the statute is not to prevent the peaceful communication of ideas unacceptable to the public or to the members of the General Assembly; rather, the legislature has designed a statute with the narrow application and effect of preventing deliberate acts of physical destruction and desecration to the flag. As such the statute seeks to limit only non-communicative aspects of conduct. That the effect of the statute, in some cases, is to collaterally restrict the symbolic statement which the actor intends his conduct to convey does not, alone, render the statute unconstitutional, nor does it prohibit the State from specifically regulating the non-communicative aspects of that conduct. "The flag is itself a monument" subject to protection from "mutilation, defacement or burning."[2] Smith v. Goguen, 415 U. S. 566, 587 (94 SC

---

[2] While the United States Supreme Court has not ruled on the issue before us, a number of federal courts have upheld the constitutionality of 18 USCA § 700 which makes it a misdemeanor to "knowingly cast contempt upon any flag of the United

1242, 39 LE2d 605) (1974) (concurring opinion of Justice White).

We hold that the State's substantial interest in protecting the physical integrity of the United States flag justifies Code Ann. § 26-2803's regulation of both specific, destructive conduct toward the flag and minor limitations on "symbolic speech" concomitant to that conduct. United States v. O'Brien, supra. Spence v. Washington, 418 U. S. 405 (94 SC 2727, 41 LE2d 842) (1974), relied on by defendants in support of their position[3] is distinguishable. In that case, the defendant was convicted of "exposing to public view a flag . . . to which a peace symbol had been affixed" in removable black tape. The Supreme Court found that Washington's improper-use statute was unconstitutional as applied to the defendant because it inhibited "the expression of an idea through activity" and the interests advanced by the State for the suppression of expression were not sufficiently substantial to justify conviction. Id. at 411. The court was careful to point out that the defendant was not charged under the flag desecration statute which prohibited the "mutilating, defacing, defiling [or burning of a flag]." Id. at 406-7. fn. 1. Further, the court was sensitive to the facts that Spence modified, without permanently damaging, a privately owned flag and displayed it on private property as "a pointed expression of anguish" over the introduction of American forces into Cambodia. Id. at 408. While the statute in Spence, as interpreted by the United States Supreme Court, sought to suppress the expression of ideas, the statute before us has as its

---

States by publicly burning . . ." United States v. Crosson, 462 F2d 96 (9th Cir. 1972) cert. den. 409 U. S. 1064 (1972); Joyce v. United States, 454 F2d 971 (D. C. Cir. 1971), cert. den. 405 U. S. 969 (1972).

[3] Defendants cite to us numerous cases which they argue demand a finding that the ideas sought to be conveyed by burning the flag are entitled to free speech protection. In Tinker v. Des Moines Independent Community School Dist., 393 U. S. 503 (89 SC 733, 21 LE2d 731) (1969) the Supreme Court struck down a school board regulation prohibiting students from wearing black armbands in protest of the Vietnam War. The court held that absent accompanying disruptive conduct, the wearing of an armband is a "passive expression of opinion" akin to pure speech which the First Amendment will protect. 393 U. S. at 508. In Street v. New York, 394 U. S. 576 (89 SC 1354, 22 LE2d 572) (1969) the defendant publicly burned an American flag shouting "we don't need no damn flag." He was convicted under a statute which prohibited both "burning" and "casting contempt" on the flag. The Supreme Court did not consider whether that portion of the statute prohibiting burning of a flag is constitutional since it found the statute was unconstitutional as applied to the defendant in that it permitted him to be punished for speaking contemptuously about the flag.

While these cases indicate that both conduct which is nearly non-verbal expression and purely verbal expression which dishonors the flag may be protected by the First Amendment, they are unpersuasive in a case where conduct and not the expression of ideas is sought to be regulated.

goal the prevention of specific conduct.

(b) Defendants also contend that Code Ann. § 26-2803 is void for vagueness in that it "outlaws virtually every other use of the flag, patriotic or otherwise, except flying it from a flagpole." Defendants suggest that such innocent acts as disposing of a worn-out flag or accidental burning of a flag are proscribed by the statute.

"Due process requires that all 'be informed as to what the State commands or forbids' Lanzetta v. New Jersey, 306 U. S. 451, 453 (1939), and that 'men of common intelligence' not be forced to guess at the meaning of the criminal law. Connally v. General Construction Co., 269 U. S. 385, 391 (1926)." Smith v. Goguen, 415 U. S. 566, 574 (94 SC 1242, 39 LE2d 605) (1974). However, "nothing prevents a legislature from defining with substantial specificity what constitutes forbidden treatment of United States flags." Id. at 581-82.

We find Code Ann. § 26-2803 is drawn with sufficient clarity and precision so as to proscribe only those *physical acts of dishonor or destruction directed at the flag.* It is drafted in language which persons of ordinary intelligence and understanding can comprehend without difficulty. The statute clearly only prohibits *deliberate* acts which mutilate, deface[4] or defile the flag. The statute, by its terms, does not encompass accidental or unintentional damage to the flag. Nor is it intended to apply to a situation where a worn flag is discarded. Such conduct does not "deliberately mutilate, deface or defile" the flag.

Further, "where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of the law." Screws v. United States, 325 U. S. 91, 102 (65 SC 1031, 89 LE 1495) (1945). Defendants' deliberate burning of the flag is clearly conduct which falls within the range proscribed by Code Ann. § 26-2803. We, therefore, cannot say that defendants did not have notice their acts were in violation of the law.

(c) Last, defendants argue that Code Ann. § 26-2803 is selectively enforced in violation of equal protection of the laws because that portion of the statute prohibiting the use of the flag for commercial advertising purposes is allegedly not being enforced.

---

[4] We note that in *Sabel v. State,* 248 Ga. 10, 13 (282 SE2d 61) (1981) this court upheld Code Ann. § 25-2613 under an attack that the statute was unconstitutionally vague in that it failed to define the word "deface." There we held that "to deface, in both legal and lay parlance is readily understood as meaning 'to injure or mar the face of.' "

Code Ann. § 26-2803 is in two parts. The first deals with the crime of mutilating, defacing or defiling the flag; the second part addresses those who use the flag for commercial advertising. The defendants are charged only under the first provision; however, they make no contention that this provision is being selectively enforced. Therefore, their claim raises no equal protection issue.

2. Defendants contend that since they were charged in separate accusations, they were entitled to separate trials and that the trial court erred in denying their motion for severance. Under these circumstances, the grant of a motion to sever is in the trial court's discretion. *Allen v. State,* 144 Ga. App. 233 (240 SE2d 754) (1977); *Padgett v. State,* 239 Ga. 556 (238 SE2d 92) (1977). We find no abuse of discretion here. Defendants did not assert antagonistic defenses; both denied committing the act with which they were charged. Moreover, separate trials would have required testimony from the same witnesses.

3. We do not agree with defendants that the trial court erred in refusing to grant them additional jury strikes. Defendants argue that because their political affiliations were not synonymous,[5] additional strikes were needed to remove those potential members of the jury antagonistic to the political philosophy of each. We conclude that defendants have failed to show that the lack of additional strikes unduly prejudiced them. Under Code Ann. § 27-2101 the trial court has the "sole discretion" to grant additional strikes where defendants are tried jointly. We find no abuse of that discretion here.

4. Defendants contend their convictions should be reversed because the State was permitted to make "an impassioned plea of patriotism" to the jury over defendants' objections that their politics were not at issue in the case. We recognize the rule affording the State considerable latitude in making closing arguments to the jury. See, e.g., *Martin v. State,* 223 Ga. 649 (157 SE2d 458) (1967). We note that the prosecutor stated to the jury in closing arguments that "the defendants are not on trial for their political beliefs." We also note that throughout the case defendants were permitted to use their trial as a forum for the expression of their political tenets. We conclude that the defendants have not shown how they were harmed by the State's closing argument. Further, defendants did not move for a mistrial following the objected-to portion of the State's argument; there is, therefore, no cause for reversal.

---

[5] Defendant Monroe is a member of the Revolutionary Communist Party. Defendant Negad is a member of the Iranian Student Association. The record does not indicate what conflicts, if any, exist between these organizations.

5. In enumerations of error five through seven defendants complain of the trial court's failure to give requested charges to the jury. Two of the requests to charge concerned the amount of consideration to be given eyewitness identification testimony and the jury's duty to consider the evidence against each defendant separately. As to these the trial court's charge substantially covered the applicable principles of law. Failure to charge these principles in the precise language requested is not grounds for reversal. *Sullens v. State,* 239 Ga. 766 (238 SE2d 864) (1977); *Leutner v. State,* 235 Ga. 77 (218 SE2d 820) (1975).

Defendants also object to the trial court's failure to charge that they were not on trial for their political beliefs. As noted previously, the record in this case shows the defendants maintained throughout trial that evidence of their political philosophies was essential to their defense. In view of this fact and the fact that the trial court appropriately charged the jury on the defendants' presumption of innocence and the State's burden of proving the guilt of each defendant beyond a reasonable doubt, we find no error.

6. Defendants complain that the trial court erred in denying their request for a pre-sentence investigation and hearing. Defendants maintain that no valid distinction can be drawn between requiring a pre-sentencing hearing prior to imposition of sentence in a felony case, Code Ann. § 27-2503, and failing to require such a hearing in a misdemeanor case. Code Ann. § 27-2506. Defendants' argument addresses itself to a matter which must be resolved, if at all, by the General Assembly.[6]

7. Last, the defendants argue that the trial court erred in sentencing each of them to twelve months imprisonment, the maximum sentence authorized for a misdemeanor. Code Ann. § 27-2506. The trial court has the discretion to impose sentence within the parameters prescribed by the statute and if the sentence is within the statutory limits, the appellate courts will not review it. *Garrett v. State,* 147 Ga. App. 500 (249 SE2d 315) (1978); *Jackson v. State,* 142 Ga. App. 565 (236 SE2d 549) (1977).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 5, 1982 —
REHEARING DENIED OCTOBER 19, 1982.

---

[6] We note that defendants' argument falls short of raising a constitutional attack on Code Ann. § 27-2506.

*Stephanie Kearns,* for appellants.
*Hinson McAuliffe, Solicitor, Paul C. McCommon III, Assistant Solicitor,* for appellee.