Diane MONROE

v.

**STATE COURT OF FULTON COUNTY, James Webb, Solicitor of Fulton County, and Michael J. Bowers, Attorney General of Georgia.**

Civ. No. C83–160.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 21, 1983.

---

Stephanie Kearns, Atlanta, Ga., for petitioner.

Donald C. English, Asst. Sol. Gen., Atlanta, Ga., for the State of Ga.

Virginia H. Jeffries, Asst. Atty. Gen. for Ga., Atlanta, Ga., for Michael Bowers.

## ORDER

ORINDA D. EVANS, District Judge.

This action is before the Court on Diane Monroe's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. For the reasons hereinafter stated, the Petition is DENIED.

### A. *Background*

The relevant facts in this matter were summarized by the Supreme Court of Georgia as follows:

> On November 29, 1979 two officers from the City of Atlanta Police Department were dispatched to the federal courthouse on Forsyth Street to observe a demonstration by the Iranian Student Association and the Revolutionary Communist Party "against the United State[s'] involvement in Iranian affairs." Trial testimony by these officers indicated that from their parked patrol car they observed a number of persons peacefully picketing and, in turn, making speeches. During this time the officers were approached by Reuben Garland, a local attorney, who expressed his desire to press charges against the group. The officers testified that while they were discussing this matter with Mr. Garland they observed [Diane Monroe and another individual] unfurl a United States flag. Defendant Monroe ignited the flag with a cigarette lighter, but the flame went out. [Another individual] then took the lighter from Monroe and ignited the flag. When Garland observed these proceedings he ran into the crowd of demonstrators and began struggling for control of the flag. At that point police officers attempted to disperse the demonstrators and extinguish the burning flag.

*Monroe v. The State,* 250 Ga. 30, 295 S.E.2d 512 (1982) (footnote omitted).

On January 17, 1980, Petitioner was convicted of misuse of the national flag in violation of Ga.Code Ann. § 26–2803 [1] and sentenced to twelve months imprisonment. Her conviction was affirmed by the Supreme Court of Georgia on October 5, 1982. On January 28, 1983, she filed her Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court, and also a Motion for Stay of her sentence. The Motion for Stay was denied on April 4, 1983. Ms. Monroe began serving her sentence on April 14, 1983.

### B. *The Claim Asserted*

Petitioner attacks the constitutionality of the Georgia flag statute as applied to her.[2] Specifically, Ms. Monroe asserts that her judgment of conviction is "unlawful on the grounds that the act for which she was convicted was peacefully burning a privately owned National flag for the purpose of conveying a message of displeasure with American foreign policy. Petitioner contends that her conduct [is] a form of speech, and is protected by the First Amendment ... and such exercise of free speech cannot be subject to criminal conviction and im-

---

1. Ga.Code Ann. § 26–2803 is titled Misuse of National or State Flag. It provides in relevant part:

    A person who deliberately mutilates, defaces, or defiles the flag of the United States ... is guilty of a misdemeanor.

2. Petitioner has not attacked the constitutionality of the statute on its face.

prisonment." Petition for Writ of Habeas Corpus at 2.[3]

### C. *Discussion*

The First Amendment to the Constitution provides in pertinent part: "Congress shall make no law ... abridging the freedom of speech ...." This amendment is applicable to the states by virtue of the Fourteenth Amendment. *Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925).

Although the First Amendment's ban against the making of laws abridging free speech appears absolute, case law has made it clear that it is not. *See, e.g., Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 54, 69, 93 S.Ct. 2628, 2633, 2641, 37 L.Ed.2d 446 (1973), *reh'g denied,* 414 U.S. 881, 94 S.Ct. 27, 38 L.Ed.2d 128 (1973), 419 U.S. 887, 95 S.Ct. 163, 42 L.Ed.2d 133 (1974); *Roth v. United States,* 354 U.S. 476, 483, 485, 77 S.Ct. 1304, 1308, 1309, 1 L.Ed.2d 1498 (1957) (cases where Court found obscenity statutes constitutional); *see also Dennis v. United States,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed.

---

**3.** This argument was raised both at the trial and on direct appeal.

**4.** Although the proposition is debatable, this Order assumes that Ms. Monroe's burning of the flag had a sufficient communicative aspect to trigger First Amendment analysis. *Cf. United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

**5.** Cases construing the federal flag desecration statute are instructive in addressing the Petitioner's claim. Section 700 of Title 18 of the United States Code provides in part:

(a) Whoever knowingly casts contempt upon any flag of the United States by publicly mutilating, defacing, defiling, burning, or trampling upon it shall be fined not more than $1,000 or imprisoned not more than 1 year, or both.

The United States Supreme Court has never considered the constitutionality of this statute. However, a number of circuit courts have found it constitutional, both on its face and as applied. *See United States v. Crosson,* 462 F.2d 96 (9th Cir.), *cert. denied,* 409 U.S. 1064 (1972); *Joyce v. United States,* 454 F.2d 971 (D.C.Cir.1971), *cert. denied,* 405 U.S. 969, 92 S.Ct. 1188, 31 L.Ed.2d 242 (1972); *cf. United States v. Kime,* 673 F.2d 1318 (4th Cir.1982) (affirming conviction under federal flag-burning statute), *cert. denied,* —— U.S. ——, 103

1137 (1951) (holding that 18 U.S.C. § 2385, making it a crime to advocate overthrow of government and therefore regulating form of pure speech, was constitutional as applied). Therefore, even if Ms. Monroe's *conduct is a form of speech, it does not necessarily follow that any infringement on her freedom of expression would be unconstitutional.*[4]

As is discussed more fully below, a question is presented as to which of two potentially applicable legal standards applies in resolving Ms. Monroe's claim. *Cf. Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (per curiam); *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *see* discussion at pp. 1027–1028, *infra.* However, either legal standard requires the Court to identify the valid interest or interests served by the state statute and determine the degree of importance of such interests. The Court turns first to this task.[5]

In its decision affirming Ms. Monroe's conviction, the Georgia Supreme Court

---

S.Ct. 266, 74 L.Ed.2d 207 (1982). The above cases have recognized that the federal government has a valid interest in protecting the flag as our symbol of national unity. The constitutional grant of power has been held to be found in Article I, Section 8 of the United States Constitution. That section confers upon Congress several powers, including the power to regulate commerce, raise and support armies, and organize, arm and discipline the military. It also authorizes Congress to make laws which are "necessary and proper for carrying into Execution the foregoing powers...." *See United States v. Crosson,* 462 F.2d at 99; *Joyce v. United States,* 454 F.2d at 985; *see also Hoffman v. United States,* 445 F.2d 226, 228 (D.C.Cir.1971).

Many states have also adopted flag desecration statutes. *See* Ely, Flag Desecration: A Case Study in the Roles of Categorization and Balancing in First Amendment Analysis, 88 Harv.L.Rev. 1482, 1502 n. 78 (1975). These statutes differ in form from state to state. Some prohibit physical mutilation or destruction of the flag; others proscribe commercial use. Cases upholding these statutes have generally found that the statutes serve either a valid interest in preventing breaches of the peace or in preventing the desecration of the flag as a symbol of national unity, or both. *E.g., Sutherland v. DeWulf,* 323 F.Supp. 740 (S.D.Ill.1971).

(Gregory, Justice) described the state's interest as follows:

> For over two hundred years the United States flag has played a significant role in the human affairs of this country. It is symbolic of the ideology of our nation. The flag is our representative emblem of the union of the states and the independence of the country. It is clear that the people of this state and of the other states of the Union have a unique and compelling interest in protecting the flag as the symbol of our nation. What may not be as readily apparent is that the public's interest lies in *having* a symbol to represent the nation. This symbol belongs collectively to the people of the various states. While it is true that a physical reproduction of the symbol in the form of red, white and blue cloth may be privately purchased and owned, that which the flag represents is not subject to private ownership. We recognize that the people of this state have a substantial interest in protecting the symbol; this interest extends to regulating conduct which seeks to destroy the symbol by destroying copies of it. In enacting Code Ann. § 26–2803 the people, through their governmental representatives, have expressed their desire to safeguard the flag and all that it represents. See generally, *Joyce v. United States,* 454 F.2d 971 (D.C. Cir.1971), cert. den. 405 U.S. 969, 92 S.Ct. 1188, 31 L.Ed.2d 242 (1972). (Emphasis in original).

250 Ga. at 32, 295 S.E.2d at 514–15.

Symbols are useful because they make tangible and concrete that which is intangible or otherwise incapable of meaningful observation. The amalgam of institutions, people and ideas, both past and present, which make up our nation certainly cannot be "observed." However, the flag can be.

Thus, the flag facilitates a citizen's identification with his country. In that respect, it is a unifying factor which is useful in rallying the people's support for their country in times of peace and war. Thus, the state's interest as described by the Georgia Supreme Court is fundamentally related to the people's desire to perpetuate the union and the form of government it espouses.

The Georgia statute, then, recognizes that the extent to which citizens will be willing to use the flag to identify with their country correlates directly with the prestige it commands. Public ridicule of the flag dilutes its effectiveness as a symbol. The Court finds that the State's interest in preserving the integrity of the flag as symbol of the union is a valid one.[6]

The Court now turns to the issue of whether Georgia's interest in preserving the integrity of the flag as symbol may be termed a substantial interest. There are two ways of approaching this issue. On the one hand, one may argue that at this point in our history, the flag has come to enjoy a position of such prestige that government need no longer be concerned about isolated occurrences of the type involved in *Monroe.* Interestingly, Georgia's other valid interest in having a flag desecration statute—prevention of breaches of the peace—stems from this very assumption, *i.e.* because the flag is so revered by the citizenry, an attack on it is likely to provoke a breach of the peace.

On the other hand, the flag as symbol serves one of the most basic of all governmental interests—the interest in self-perpetuation and self-preservation. Viewed in this way, it is difficult to characterize an interest in preserving the integrity of the symbol as unimportant. Because the Court does not believe it is appropriate for analy-

---

**6.** Although Petitioner has not challenged Georgia's power to pass legislation to protect the integrity of the United States flag, the Court *sua sponte* notes that Georgia undeniably has that power, even though it does not fall within the customary framework of the "police power." The sovereign states which united to form the United States had recognized the flag as their emblem before the Constitution was signed in 1787. *See United States v. Crosson,* 462 F.2d at 99. The Constitution ceded certain powers exclusively to the federal government, but no express delegation was made which negatives a state's right to pass legislation to protect the flag. Neither does the mere fact that federal legislation has been passed constitute a preemption. *See* 18 U.S.C. § 700(c).

sis of the strength of the interest to depend upon the particular time in history at which the analysis is made, it adopts this latter approach and finds that the interest in maintaining the integrity of the flag is, as a general proposition, substantial.

Full consideration of this issue requires, however, that recognition be given to the fact that the interest in protecting the flag's integrity is being asserted here by a state, as opposed to the federal government. The State's interest is viewed as collateral to, and in aid of, the federal government's interest. *See Jones v. Wade,* 479 F.2d 1176, 1179 n. 1 (5th Cir.1973), *rev'd and remanded on other grounds,* 504 F.2d 427, 428 (5th Cir.1974). While this in no way undercuts the validity of the interest, it places the State's interest lower than that of the federal government on a scale of relative values. Thus, the Court finds that the State's interest in protecting the integrity of the national flag is material, but not substantial.

Even though the Georgia Supreme Court did not identify prevention of breach of the peace as an interest served by the statute, it is generally recognized that flag desecration statutes serve that purpose and that such purpose is valid and important. *Jones v. Wade,* 479 F.2d at 1179. Further, the Court finds that purpose was served in Ms. Monroe's case because her conduct—igniting an American flag during a public political demonstration—was likely to cause a breach of the peace.[7] *See Sutherland v. DeWulf,* 323 F.Supp. 740, 745 (S.D.Ill.1971) (desecration of flag "by burning it in a public place is an act having a high likelihood to cause a breach of the peace"); *but see United States of America ex rel. Radich v. Criminal Court of the City of New York,* 385 F.Supp. 165, 180 n. 61 (S.D.N.Y.1974). The mere fact that the only arguable breach which occurred prior to police intervention—Mr. Garland's struggling for control of the flag—was minor, is irrelevant.

Having found that the State of Georgia has valid interests in protecting the integrity of the flag and in preventing breaches of the peace, the next step is to determine what legal standard is relevant in resolving the issue of whether or not the Georgia statute was unconstitutionally applied to Ms. Monroe. Two choices are presented. One possibility is the standard set forth in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); the other is that set forth in *Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (per curiam). In both of these cases, petitioners argued that application of certain criminal statutes violated their First Amendment right to engage in symbolic speech. O'Brien's conviction was affirmed; Spence's was reversed.

In *O'Brien,* defendant was convicted under a federal statute which made the knowing destruction of a selective service registration certificate a criminal offense. O'Brien, a war protester, argued that the burning of his certificate at a public rally was a constitutionally protected act of free speech. In upholding the conviction, the Supreme Court set forth a four part test as to when application of a governmental regulation is valid notwithstanding incidental impact on free speech. The Court held:

> [A] government regulation is sufficiently justified [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

391 U.S. at 377, 88 S.Ct. at 1679.[8]

In *Spence,* another war protester was convicted under the state of Washington's

---

7. The fact that the Georgia Supreme Court did not mention the state's interest in preventing breaches of the peace does not negative the existence or validity of such interest.

8. Although quotation of the four part test alone appears to be a test for facial constitutionality, the full opinion makes it clear that it is a test for the constitutionality of a statute as applied.

flag misuse statute.[9] He had hung an American flag upside down in the window of his apartment. A peace symbol was attached to the flag. Police officers who happened to observe the flag went to his apartment and arrested Spence. No public demonstration was involved.

The Supreme Court held in essence that the applicable governmental interest served by the Washington statute, *i.e.*, preventing commercialization of the flag, was not "unrelated to the suppression of free expression" per *O'Brien*. That being the case, the Court determined that it would consider the following in ruling on Spence's claim: (1) whether the interest furthered by the statute was valid; and (2) whether under the circumstances of the particular case, the extent to which Spence's First Amendment interests were served outweighed the extent to which the state's valid interest was impaired by his conduct.

The Court appeared to express some doubts about the validity of Washington's interest in "preserving the national flag as an unalloyed symbol of our country," 418 U.S. at 412, 94 S.Ct. at 2731, but elected to assume the validity of that interest. It then went on to undertake the balancing test mentioned above and found that Spence's interests were paramount. The Court found that the interest served by the statute had not been significantly impaired. Further, it noted that the flag had not been permanently disfigured. It then found that Spence's First Amendment rights had been significantly furthered by this conduct, noting: "Moreover, his message was direct, likely to be understood, and within the contours of the First Amendment." *Spence*, 418 U.S. at 415, 94 S.Ct. at 2732.

The initial step, then, in determining whether to apply *O'Brien* or *Spence,* is to determine whether or not the interests served by the Georgia statute are unrelated to free expression.

Georgia's interest in prevention of breaches of the peace clearly is an interest unrelated to suppression of free expression. However, for the reasons stated hereinafter, the Court is unable to hold that Georgia's interest in protecting the integrity of the flag is similarly unrelated. For this reason, and also because Georgia's statute proscribes both public and private flag desecration, thereby arguably violating criterion (4) of *O'Brien,* the Court will apply the *Spence* test in this case.

The reason Georgia's interest in protecting the integrity of the flag is not unrelated to suppression of free expression lies in the inherent nature of the national flag as a political symbol. Simply stated, the flag is a predictable target for those who wish to make a symbolic attack on the United States or its policies.[10] Undoubtedly, that is one of the reasons flag desecration is a crime. Further, the Supreme Court arguably has already held by implication in *Spence* that a state's interest in preserving the dignity of the flag is not unrelated to suppression of free expression. *Spence,* 418 U.S. at 414 n. 8, 94 S.Ct. at 2732 n. 8.

A symbol is "something that stands for or suggests something else by reason of relationship, association, [or] convention...." Webster's New Collegiate Dictionary (1979). The flag stands for the United States and all that the country represents. If an individual perceives that the United States backs a particular policy, for example, then the flag may represent that policy to such individual.

The Georgia statute limits only physical conduct, not words. There is no reason to

**9.** This statute, Wash.Rev.Code § 9.86.020, provides in relevant part:

No person shall, in any manner, for exhibition or display:

(1) Place or cause to be placed any word, figure, mark, picture, design, drawing or advertisement of any nature upon any flag ... of the United States or of this state ... or

(2) Expose to public view any such flag ... upon which shall have been printed, painted or otherwise produced, or to which shall have been attached, appended, affixed or annexed any such word, figure, mark, picture, design, drawing or advertisement....

**10.** A draft registration certificate is not a symbol of similar universality, even though at a given time it might have political significance for a large segment of the population.

think that the legislature was seeking to insulate government from criticism. However, it is foreseeable that the flag will be perceived by some at times as representing certain values or policies which are unacceptable to them. Where the unacceptable policies are deeply disturbing to such an individual, he may desire to express anger at or rejection of the United States. Destroying or mutilating a flag is certainly a vivid, sensational means of conveying these emotions. While this reality does not mean that a flag desecration statute is "calculated to" suppress free expression, neither does it permit a finding that a statute prohibiting flag desecration is "unrelated to" suppression of free expression, per *O'Brien*.

Applying *Spence*, the Court first notes its prior finding that both interests served by the Georgia statute are valid interests. One is an important interest; the other is a material interest.

The Court further finds that Ms. Monroe's lighting fire to the flag at a political demonstration directly contravened the State's interest in protecting the flag's symbolic integrity. Such an act denigrates the flag as symbol to a much greater degree than does passive misuse of the type involved in *Spence*. Also, the State's interest in preventing breach of the peace was implicated when the police had to step in to stop the altercation which was developing.[11]

On the other hand, Ms. Monroe's First Amendment interest was not served in any meaningful way by burning the flag at the demonstration. That interest was in the free exchange of information and ideas respecting the United States' involvement in Iran. Burning the flag did not convey any information or ideas; indeed, it did not even identify the subject of her concern. Any such information was conveyed collaterally by speeches that were made or placards that were displayed. The only possible relevance of her burning of the flag to the First Amendment was that it underlined

the extent of her displeasure with the United States' policies.

In summary, in light of the fact that Ms. Monroe's First Amendment interest, if any, was barely cognizable on the facts of this case, and the valid interests served by Georgia's flag desecration statute were directly contravened by her conduct, the Court finds that under *Spence* her conviction and confinement are not unconstitutional and her Petition is DENIED.

---

11. Of course, the Court is unable to find that this occurrence had any material lasting effect on the viability of the flag as symbol. Also, as noted, the breach of the peace which occurred was quite minor. However, this is deemed irrelevant to the *Spence* analysis.