305 Ga. 624
FINAL COPY

S19A0296.  TUGGLE v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Justin Cody Tuggle was convicted of murder and

related offenses in connection with the stabbing and beating death of Kevin

Harmon.[1] Tuggle appeals, alleging, among other things, that the trial court erred

---

[1] On February 15, 2012, a Spalding County grand jury indicted Tuggle, along with Todd Jones and William Moore, for the crimes committed against Harmon. Specifically, the men were charged with: malice murder (Count 1), felony murder predicated on aggravated battery (Count 2), armed robbery (Count 3), aggravated battery (Count 4), aggravated assault with a knife (Count 5), aggravated assault with a baseball bat (Count 6), and possession of a knife during the commission of a crime (Count 7).

Tuggle was tried alone from October 1-4, 2012, and was found guilty of all charges; he filed a motion for new trial on October 9, 2012. After Jones and Moore were tried and convicted in February 2013, Tuggle was sentenced, along with his co-indictees, to life without the possibility of parole for malice murder, a concurrent life sentence for armed robbery, twenty years concurrent for aggravated assault with a knife, and five years consecutive for possession of a knife during the commission of a crime. The trial court merged the remaining aggravated assault count and aggravated battery count into the malice murder charge for sentencing purposes. Although the trial court also purported to merge the felony murder count into the malice murder count for sentencing purposes, the felony murder count was actually vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 371 (4) (434 SE2d 479) (1993). "Because that error does not affect the sentence actually imposed, however, it is not necessary to vacate the sentencing order." Ware v. State, 302 Ga. 792, 794-795 (809 SE2d 762) (2018).

in admitting a hearsay statement of a co-defendant at trial, and erred in denying his motion for mistrial. We affirm.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial established that, on February 14, 2011, officers responded to the residence of Monica Martin in Griffin after receiving a call from Martin's nephew, Tuggle, reporting a robbery and an assault. Upon their arrival, officers encountered Tuggle, Todd Jones, and William Moore; the men were covered in blood. Tuggle had a swollen spot on his head and an inch-long cut near his left thumb. Moore was being treated for a stab wound to the leg. Tuggle told officers that he and Moore had been the victims of a robbery.

During their initial investigation, officers found blood inside and outside the vehicle the men had been driving, and located a knife sheath on the back passengers-side floorboard of the car. A bloody knife was recovered from behind a refrigerator inside the Martin residence; it was later identified as belonging to Moore. Tuggle's aunt also located $40 underneath a rug inside her

On December 8, 2016, Tuggle amended his motion for new trial through new counsel. Following a hearing, the trial court denied the motion as amended on January 12, 2018. Tuggle timely filed a notice of appeal to this Court, and the case was docketed to the term of this Court beginning in December 2018 and submitted for a decision on the briefs.

home, a bloody aluminum baseball bat in the woods behind the residence, and some of Jones' clothes in a burn pile on the side of the home.

After providing several conflicting stories and inconsistent information regarding the location of the alleged robbery, Tuggle confessed that he, Jones, and Moore were the perpetrators, not the victims, of the robbery and assault. Tuggle told officers that the men were at a gas station when they observed Harmon withdraw money out of an ATM; thereafter, the group decided to rob him. After withdrawing money, Harmon approached the group looking to buy drugs, and Tuggle volunteered to drive Harmon to a spot where he could make a purchase. Surveillance video from the gas station showed Harmon get into a vehicle with the three men. Tuggle stated that they first drove Harmon to a friend's house in the Runaway Lakes subdivision in Spalding County with the intention of robbing Harmon in the front yard. When the homeowner refused to allow the robbery to occur, the group left, driving Harmon to a vacant lot within the same subdivision.

The men exited the vehicle and smoked some marijuana. At some point, Moore grabbed Harmon from behind, and Tuggle took $40 from Harmon's

3

pocket. During a struggle, Harmon obtained a knife from Moore's person and stabbed him in the leg. Thereafter, Tuggle stabbed Harmon in the right buttock and then Jones struck Harmon with a baseball bat. The group left Harmon in the vacant lot and drove to the Martin residence, home of Tuggle's aunt. There, Tuggle admitted to his aunt that the three men had tried to rob someone of drugs and money and further stated, "I think I hurt him."

Around the same time, Jones called a family friend, Brenda Maddox. He asked Maddox not to tell anyone that they had spoken and then stated that he, Tuggle, and Moore were involved in a robbery; the victim stabbed Moore during the robbery; he hit the victim with a baseball bat; and that "they" had killed the victim. Jones also requested that Maddox bring him a new pair of shoes because his current shoes had blood on them and his shoe prints were at the crime scene.

Tuggle eventually led law enforcement to the vacant lot of the Runaway Lakes subdivision where Harmon's body was found covered in blood. His left pocket was turned inside out and his wallet and a bloody knife were located nearby. The medical examiner testified that Harmon had suffered fifty-eight total injuries, including blunt and sharp force wounds to the head and neck; a stab wound to the right buttock; defensive wounds to the hands; and several

4

skull fractures. The medical examiner explained that the stab wound to Harmon's right buttock was not a fatal injury and further determined that the multiple blunt and sharp force injuries to Harmon's head and neck caused his death.

Blood samples taken from the car, the two knives, and the baseball bat were sent to the GBI for testing; Moore's DNA was located inside the car, on the baseball bat, and on both knives, and Harmon's DNA was found on the outside of the vehicle and on the baseball bat.

1. Though not enumerated by Tuggle, we find that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Tuggle was guilty of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. First, Tuggle claims that the trial court erred in admitting the hearsay statements of co-indictee Jones through lay witness Brenda Maddox at trial. Tuggle argues that, when Jones spoke to Maddox about beating a man with a baseball bat and needing new shoes, the conspiracy between Tuggle and

his co-indictees had already ended, thereby rendering Jones' statements inadmissible against Tuggle under Georgia's old Evidence Code.[2]

Pretermitting the question of whether the admission of Jones' statements was erroneous, any error in the admission of the statements was harmless. First, prior to Maddox's testimony, the State called the lead investigator on the case as a witness. He testified, on both direct and cross-examination, and without any objection, that Jones requested Maddox bring him a new pair of shoes and further told her that "they" had beaten a man with a baseball bat.[3] Accordingly, Maddox's subsequent testimony was cumulative of other evidence already admitted at trial. Furthermore, the evidence establishing Tuggle's guilt, which included Tuggle's own admission of being involved in the stabbing and beating, was overwhelming. Based on the foregoing, we conclude it is highly probable that any error did not contribute to the jury's guilty verdict. See Timmons v. State, 302 Ga. 464 (2) (b) (807 SE2d 363) (2017); Boothe v. State, 293 Ga. 285 (2) (b) (745 SE2d 594) (2013).

_____

[2] See former OCGA § 24-3-5 ("After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all."). Because this case was tried before the January 1, 2013 effective date of Georgia's new Evidence Code, the old Evidence Code applies.

[3] The admissibility of this testimony has not been challenged on appeal.

3.    Next, Tuggle contends that the trial court erred in denying his motion for mistrial and in failing to give the jury a curative instruction during closing arguments after the prosecutor improperly commented on Tuggle's decision not to testify.  However, because there is no transcript of closing arguments, and because the trial court made no finding as to what the State argued, this claim also fails.

The record shows that the court reporter did not transcribe closing arguments, only the objections lodged by the parties.  And, while the prosecutor conceded that she had argued that Tuggle "never . . . accepted any responsibility or never showed any remorse," the parties and the trial court went back and forth attempting to recall exactly what the prosecutor said and in what context the comment was made — i.e., whether the prosecutor was referring to Tuggle's failure to testify at trial or to Tuggle's numerous statements to law enforcement and his lack of an emotional response during the same.  Indeed, though the trial court thought it heard the prosecutor say that "[Tuggle] never said he was sorry," the court noted that, "unfortunately, we don't have a recording of it.  So we're all depending on what we think [the prosecutor] said."  Because the

7

parties' closing arguments were not transcribed, and because the trial court made no findings as to what the State argued, Tuggle cannot show that the State made an impermissible argument. See Campbell v. State, 269 Ga. 186, 188 (11) (496 SE2d 724) (1998) (explaining that, because closing arguments were not transcribed, a defendant cannot show the State made an impermissible argument).

4.  Finally, Tuggle alleges that his sentences should be vacated and his case should be remanded for resentencing because the trial court failed to exercise its discretion during sentencing. Specifically, Tuggle argues that the trial court abdicated its judicial responsibility and discretion when it sentenced Tuggle and his co-indictees to the same sentence. We disagree.

"Although the legislature defines crimes and sets the ranges of sentences, . . . trial courts generally have the discretion to fashion sentences that fit the crimes for which the defendant is convicted, so long as the sentences fall within the statutory ranges." (Citations omitted.) State v. Riggs, 301 Ga. 63, 68 (799 SE2d 770) (2017). Generally speaking, trial courts have "the discretion to impose sentence within the parameters prescribed by [a] statute and if the

sentence is within the statutory limits, the appellate courts will not review it."

(Citations omitted.) <u>Monroe v. State</u>, 250 Ga. 30, 36 (7) (295 SE2d 512) (1982).

Here, the record shows that the trial court sentenced Tuggle within the statutory limits, and considered numerous factors prior to issuing Tuggle's sentence. Accordingly, we cannot say that the trial court failed to exercise its discretion during sentencing.

<u>Judgment affirmed. All the Justices concur.</u>

Decided March 4, 2019 — Reconsideration denied March 27, 2019.

Murder. Spalding Superior Court. Before Judge Sams.

Kevin A. Anderson, for appellant.

Benjamin D. Coker, District Attorney, B. Ashton Fallin, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General, for appellee.