### 42694. BRUGMAN v. THE STATE.
### 42695. ALAMINO v. THE STATE.
(339 SE2d 244)

GREGORY, Justice.

Appellants Daniel Brugman and Orlando Alamino were indicted in Baker County, along with John Alvarez, Stephen Earl Brown and Ralph Pedraza, Jr., for trafficking in cocaine.

Acting on a tip from county law enforcement officers in Sebring, Florida, officers from the Florida Department of Law Enforcement (FDLE) in Jacksonville, Florida began monitoring the activity of three vehicles, including a blue pick-up truck driven by appellant Brugman. Officers suspected these vehicles of being involved in an illegal drug operation due to the fact that they were transporting portable fuel pumps and portable lights, equipment frequently utilized in the smuggling of drugs by aircraft. Surveillance continued as these vehicles moved northbound into Georgia where the Florida officers contacted GBI agents in Albany for assistance. The occupants of the vehicles, including Alamino and Brugman, spent the night of July 9, 1983, in a Thomasville, Georgia motel where they were kept under surveillance by GBI and FDLE officers. The following day the sus-

pects were observed testing and talking with one another on hand-held radio transmitters in the motel parking lot. The officers followed the vehicles to a wooded area in Baker County on the night of July 10, 1983. Officers heard CB transmissions from one of the Florida vehicles instructing the others to stop and turn off their lights. Law enforcement officers testified that shortly before midnight, they heard a nearby aircraft flying in a low position. The aircraft landed near where the officers were parked. As some of the officers drove their vehicles in the direction of the airplane, they encountered appellant Brugman driving the blue pick-up truck away from the plane. They stopped Brugman and arrested him. They found Alamino, the driver of another of the vehicles under surveillance, hiding in the woods near the airplane.

Jacques Dellanoy, the pilot of the aircraft, pled guilty and testified against appellants at trial. Dellanoy testified to meetings with appellants Brugman and Alamino, as well as Brown and Alvarez, to coordinate plans for smuggling the cocaine from South America into Georgia. Dellanoy testified that once he landed the plane in Georgia, Alvarez and Brugman loaded the drugs into Brugman's truck. He further testified that Alamino's role in the operation was to aid in refueling the plane and to fly with Dellanoy on the return flight to Florida to refit and clean the aircraft.

Alvarez eluded arrest and, according to the parties, has not been apprehended. Stephen Earl Brown escaped from the Baker County jail shortly after arraignment, and had not been apprehended prior to appellants' trial.

Law enforcement officers found 350 pounds of cocaine in the truck Brugman was driving. Both Brugman and Alamino were convicted of trafficking in cocaine. Brugman was sentenced to twenty-five years and a $250,000 fine. Alamino was sentenced to twenty years and a $250,000 fine. Co-defendant Ralph Pedraza was acquitted.

1. The trial court initially ruled that Stephen Earl Brown would be tried, *in absentia*, with Brugman, Alamino and Pedraza.[1] On the second day of trial a witness reported that he had observed a Florida Department of Law Enforcement "wanted poster," depicting Stephen Earl Brown, in the room where witnesses had been sequestered during the first day of trial.[2] The witness testified, out of the presence of the jury, that the poster lay face-up on a mantle, but was "partially obscured" by other papers lying on top of it. When it was discovered that the jury had been stationed in this room for approximately ten minutes before the second day's proceedings began, Brugman moved

---

[1] John Alvarez was not tried with the other co-defendants.
[2] The record does not reveal how this document came to be in the witness room.

for a mistrial on the ground that the jury's possible discovery of the poster would have an irreparably prejudicial impact on him. The trial court, without identifying the wanted poster, inquired whether the jurors had seen any documents "lying on the mantle." One juror responded he had, and had examined them. At no time was the nature of the document in question revealed to the other jurors. The trial court denied the motion for mistrial and severed Brown's trial from that of the remaining co-defendants. Shortly thereafter, the trial court inquired whether Brugman would like to replace the juror who saw the wanted poster. Brugman's counsel responded "in light of the ruling" to sever Brown's trial, he would not ask the court to remove the juror as "the main curative action has already been taken." When the trial court expressed its intention to question this juror's impartiality outside the presence of the remaining jurors, Brugman's counsel stated, "I don't want the court to do that" [as] "it will put the juror under additional pressure."

Brugman now complains it was error to deny his motion for mistrial because the sight of the wanted poster would prevent "any ordinary juror from being impartial."

The trial court took appropriate curative measures in severing Brown's trial, and in offering to remove the juror in question. We therefore find the trial court did not abuse its discretion in denying Brugman's motion for mistrial. See *Harper v. State,* 249 Ga. 519, 532 (292 SE2d 389) (1982).

2. Brugman and Alamino argue the trial court erred in denying their *pre-trial* motions to sever their trials from that of Stephen Brown.

(a) Brugman maintains it was impossible for him to overcome the prejudice generated by the publicity of Brown's escape from jail. However, Brugman has not demonstrated that the jury was prejudiced by this pre-trial publicity. He asked no questions of the potential jurors on voir dire, nor does the record show that he offered any evidence of prejudicial pre-trial publicity in support of his motion. Having failed to carry his burden of proving harm, we cannot say the trial court erred in denying Brugman's motion to sever. *Cain v. State,* 235 Ga. 128, 130 (218 SE2d 856) (1975); see Daniel, Georgia Criminal Trial Practice, § 14-42, p. 379 (4th ed.). Furthermore, Brugman was severed during the course of the trial as described in Division 1.

(b) Alamino maintains that the State's evidence showing Brown's participation in the crime charged was "overwhelming." Alamino asserts that this evidence had an inherently prejudicial impact on his case which could have been remedied only by the grant of his pre-trial motion to sever. We note that the specific evidence to which Alamino refers was admitted *after* the trial court severed Brown's

trial from the trial of the other co-defendants. Since this evidence was properly admitted at a time when Brown and Alamino were no longer co-defendants, there is no error.

3. Brugman argues the trial court erred in denying his motion for mistrial on the ground that "several"[3] GBI agents wore hats in the courtroom with "GBI" stamped on them. According to Brugman, one of these agents was in possession of a semi-automatic rifle, creating the impression, he claims, of an "armed camp." Brugman maintains this "intimidating" atmosphere made it impossible for him to receive a fair trial.

We do not find the courtroom presence of identified GBI agents so inherently prejudicial as to require a new trial. The need for security in this case was obvious: one of the co-indictees had, with the assistance of armed masked intruders, escaped from jail, while another remained at large. See *In re Irvin*, 254 Ga. 251 (328 SE2d 215) (1985). We are not persuaded that the jurors in this case were intimidated by the presence of GBI agents such that they were unable to decide the issues fairly.

4. Brugman argues that the trial court erred in denying his motion to suppress from evidence the nine duffel bags of cocaine found in the bed of the pick-up truck he was driving. Brugman maintains law enforcement authorities should have obtained a search warrant prior to the *seizure* of the truck.

It is clear from the record and transcript of evidence that a GBI agent obtained a search warrant prior to the *search* of the truck. At the time Brugman was arrested, GBI agents secured the pick-up truck he had been driving. Through the open hatch of the truck's camper top, agents observed nine green duffel bags "which appeared to contain bundles." Believing these bags to contain drugs, officers impounded the truck and obtained a search warrant to search it and the contents of the duffel bags. Subsequently, a second search warrant was obtained to search the contents of a briefcase found in the front seat of the truck.

In *Arkansas v. Sanders*, 442 U. S. 753 (99 SC 2586, 61 LE2d 235) (1979), police received reliable information that Sanders would be arriving at the Little Rock Airport in possession of a green suitcase containing marijuana. Upon his arrival in Little Rock Sanders was placed under police surveillance. Sanders hailed a taxi and locked the suitcase in its trunk. Police stopped the taxi some blocks from the airport, seized the suitcase and opened it to discover 9.3 pounds of marijuana. The issue before the Supreme Court was whether a warrant should have been obtained to search the contents of the suitcase. The

---

[3] The number of GBI agents present in the courtroom is not disclosed in the record.

court first noted that "the Constitution does not require a search warrant . . . when the police stop an automobile on the street or highway because they have probable cause to believe it contains contraband or evidence of a crime." 442 U. S. at 760. The court went on to say that the police "were justified in stopping the [taxi], searching it on the spot, and seizing the suitcase they suspected contained contraband." 442 U. S. at 761. The court held, however, that the State failed to prove that the warrantless search of the suitcase was justified under these circumstances.

We believe that the case before us is controlled by *Sanders*. We need not decide whether the duffel bags in question should, for the purposes of a search warrant, be classified as personal luggage, as a search warrant was obtained before the duffel bags were opened. Under either circumstance the requirements of *Sanders* are satisfied: the GBI agents had probable cause to stop Brugman's truck, and seize the duffel bags they suspected contained cocaine. A search warrant was then obtained to examine the contents of the bags. Therefore, the trial court did not err in denying Brugman's motion to suppress.

5. Brugman raises three constitutional challenges to OCGA § 16-13-31 (e) (2). This section provides, "The district attorney may move the sentencing court to impose a reduced or suspended sentence upon any person who is convicted of a violation of this Code Section and who provides substantial assistance in the identification, arrest or conviction of any of his accomplices, accessories, co-conspirators or principals. Upon good cause shown, the motion may be filed and heard in camera. The judge hearing the motion may impose a reduced or suspended sentence if he finds that the defendant has rendered such substantial assistance."

(a) Prior to trial Brugman unsuccessfully moved to dismiss his indictment on the ground that this Code Section violates his Fifth Amendment right to not be "compelled in any criminal case to be a witness against himself." We note at the outset that Brugman makes a facial attack on the constitutionality of this Code Section: he does not argue that following conviction he wished to seek a reduction of his sentence under the Code Section, but did not do so out of concern of incriminating himself further. It is clear from the record that Brugman did not raise a Fifth Amendment objection or interpose this argument at the time he was sentenced. Rather, Brugman's position is that OCGA § 16-13-31 (e) (2) places anyone convicted of trafficking in cocaine on the horns of a dilemma: remain silent and receive the mandatory sentence, or provide information about others which might have the additional effect of implicating the convicted trafficker in yet other crimes with no protection of immunity, in return for a possibly reduced sentence on the original conviction.

In support of his position Brugman cites a number of federal cases which have invalidated discretionary sentencing procedures on Fifth Amendment grounds. In *United States v. Garcia*, 544 F2d 681, 683 (3rd Cir. 1976), the trial court informed the defendant that it would "like to be lenient and merciful," but could not since the defendant had not given federal authorities information which would help "society rid itself" of illegal drugs. In that case the defendant pled guilty to possession of less than 21 grams of cocaine. In exchange for a lesser sentence the trial court required the defendant to reveal "his source of supply of cocaine." 544 F2d at 682. The Third Circuit held that the defendant's Fifth Amendment rights were violated because he was forced to elect between remaining silent and foregoing leniency, or speaking and running the risk of giving information which might lead to additional prosecutions with no prospect of immunity. Similar factual circumstances have led the Second, Fifth and Ninth Circuits to reach, with minor differences, the same conclusion. See *United States v. Vermeulen*, 436 F2d 72 (2nd Cir. 1970); *United States v. Rogers*, 504 F2d 1079 (5th 1975); *United States v. Pierce*, 561 F2d 735 (9th Cir. 1977).

We are not, however, presented with the problem faced in these cases. The statute states that where one convicted of trafficking in cocaine provides "substantial assistance in the identification, arrest or conviction of any of his *accomplices, accessories, co-conspirators or principals,*" the district attorney may recommend that the trial court reduce his sentence. In clear language ("accomplices, accessories, co-conspirators or principals") the statute contemplates only that the convicted trafficker will provide information about *others involved in the crime for which he has been convicted.* The statute does not, on its face, compel the defendant to exchange his own Fifth Amendment rights for a chance at a reduced sentence. He has already been convicted of the only crime regarding which his substantial assistance to the authorities may benefit him. It is only where the convicted trafficker alleges that to avail himself of the opportunity for a reduced sentence would compel him to surrender his Fifth Amendment rights, and possibly implicate him in *additional* crimes without the benefit of immunity that the federal courts have recognized a constitutional violation. The statute in question does not, on its face, pose such problems.

We note that in construing a similar mandatory sentencing provision,[4] the Louisiana Supreme Court has reached the same result. See

---

[4] LSA-R.S. 40:967 (E) and (F) impose mandatory minimum sentences for the intentional possession of a number of controlled substances. Subsection (G) (2) provides, "The district attorney may move the sentencing court to reduce or suspend the sentence of any person to whom the provisions of subsection E and/or F are applicable who provides substantial assis-

*State v. LeCompte*, 406 S2d 1300 (La. 1981). While the "statute is designed to encourage the convicted defendant to cooperate with the authorities, the statute is not compulsory, and it is reasonable to assume that a defendant could furnish 'substantial assistance' in the identification of other parties without incriminating himself in acts other than those for which he already stands convicted." 406 S2d at 1305. Additionally, the benefits of the statute may "be obtained by a cooperating defendant in a manner consistent with constitutional law regarding assertion of the self-incrimination privilege, since a valid claim of privilege could be overcome with a grant of immunity from further prosecution." 406 S2d at 1305-6.

b. The constitutionality of the use of mandatory sentencing under this code section has been upheld. *Paras v. State*, 247 Ga. 75 (274 SE2d 451) (1981). Further, we reject Brugman's argument that the term "substantial assistance" is too vague for persons of ordinary intelligence to understand, and therefore find no due process violation. *Monroe v. State*, 250 Ga. 30 (1b) (295 SE2d 512) (1982).

c. Brugman maintains that OCGA § 16-13-31 (e) (2) violates Art. I, Sec. II, Par. III of the 1983 Georgia Constitution which provides, "The legislature, judicial and executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided." Brugman argues that by providing "the district attorney may move the sentencing court to impose a reduced or suspended sentence upon any person who is convicted of a violation of" OCGA § 16-13-31, the legislature has unconstitutionally delegated the power of the judiciary to the executive branch[5] in that a reduced sentence may be obtained only at the discretion of the district attorney.

In deciding this novel issue[6] we find it helpful to examine the law of foreign jurisdictions. As noted above, Louisiana has a mandatory sentencing statute for the intentional possession of controlled substances which is similar to OCGA § 16-13-31. Section 40:967 (G) (2) of the Louisiana Revised Statutes provides that "the district attorney

---

tance in the identification, arrest or conviction of other parties or conspirators to the crime for which he was convicted or to related crimes. The arresting agency shall be given an opportunity to be heard in reference to any such motion. The court may reduce or suspend the sentence if it finds that the defendant rendered such substantial assistance."

[5] While the office of District Attorney appears in our Constitution under the Judicial Article, 1983 Georgia Constitution, Art. VI, Sec. VIII, we do not have to decide whether district attorneys are in the executive branch, judicial branch or both, because for the purposes of this case, we can simply assume without deciding that the district attorney is a member of the executive branch.

[6] We note that this court has upheld OCGA § 16-13-31 against a separation of powers attack that in enacting mandatory sentences, the legislature has taken from the judiciary its traditional discretionary sentencing function. See *Paras v. State*, 247 Ga. 75, supra.

may move the sentencing court to reduce or suspend the sentence of any person to whom the provisions [of the sentencing statute] are applicable who provides substantial assistance in the identification, arrest or conviction of other parties or conspirators to the crime for which he was convicted or to related crimes." In evaluating this statute against a separation of powers attack in *State v. LeCompte*, 406 S2d 1300, supra, the Louisiana Supreme Court initially determined that the separation of powers clause of the Louisiana Constitution was not offended because the "ultimate decision to reduce or suspend the sentence rests not with the district attorney, but with the courts." 406 S2d at 1310. Prompted by Justice Lemmon's concurring opinion, the court on motion for rehearing altered its position, finding the separation of powers clause could not tolerate the conditioning of the judiciary's ability to reduce a sentence on the arbitrary discretion of a member of the executive branch. However, the Louisiana Supreme Court found the statute was subject to an interpretation which would render it constitutional. The court determined that a reasonable interpretation of the statute "is that the court is very specifically given the discretion to reduce or suspend sentence if it finds that the defendant has rendered substantial assistance, etc. Although there also appears a specific provision for the district attorney to so move, the court's discretion and authority under this interpretation is express and not conditional. Since the court has the discretion to reduce or suspend sentence when the defendant has met the requirements of the statute, the court may do so on its own motion, or its ruling may be triggered by motion of either the district attorney or the defendant." 406 S2d at 1312. As Justice Lemmon had pointed out, the fact that the legislature has authorized the district attorney to move for a reduced sentence does not preclude the defendant from filing such a motion or prohibit the trial court from proceeding under the statute *sua sponte*. See also *State v. Olson*, 325 NW2d 13 (Minn. 1982) which applies these same principles.

We are persuaded that a similar construction of OCGA § 16-13-31 (e) (2) will not only render it constitutional under the attack made herein, but will result in fairer treatment of one convicted under the statute.

"Acts of the Legislature are not only presumed to be constitutional, but . . . the authority of the Courts to declare them void, will never be resorted to, except in a clear and urgent case. . . ." *Bartow County Bank v. Bartow Bd. of Tax Assessors*, 251 Ga. 831, 833 (312 SE2d 102) (1984). "An act must be construed to support its constitutionality if there is one construction which would support constitutionality and one which would not." *Lasseter v. Ga. Public Service Comm.*, 253 Ga. 227, 230 (319 SE2d 824) (1984).

Applying these principles, we hold that where any person is con-

victed under OCGA § 16-13-31, and provides "substantial assistance" to the authorities as contemplated by the statute, this information may be brought to the attention of the sentencing court by motion of either the district attorney or the defendant, or the sentencing court may make its own inquiry into the matter. "The judge hearing the motion may [then] impose a reduced or suspended sentence if he finds that the defendant has rendered such substantial assistance." OCGA § 16-13-31 (e) (2). Such a construction of the statute assures that the power to impose sentence within the range prescribed by the legislature, where the conditions of OCGA § 16-13-31 (e) (2) are met, remains in the judiciary.

6. Last, Alamino argues that the trial court erred in charging the jury that "the mere presence of a defendant at the scene of a crime, if any, at the time of the perpetration would not be sufficient to convict that defendant of any crime." Alamino maintains the charge was inadequate as it permitted the jury to draw negative inferences from his presence at the scene of the crime. We do not agree. The charge is a correct statement of the law and was adjusted to the evidence presented at trial.

*Judgment affirmed. All the Justices concur, except Weltner, J., disqualified.*

DECIDED FEBRUARY 13, 1986.

*Frank K. Martin, Arthur A. Mendenhall, Jr.,* for appellant (case no. 42694).

*Garland, Nuckolls & Catts, Edward T. M. Garland, John R. Hesmer,* for appellant (case no. 42695).

*J. Brown Moseley, District Attorney,* for appellee.