S05A1634. SERVICE EMPLOYEES INTERNATIONAL UNION
et al. v. PERDUE et al.
(628 SE2d 589)

CARLEY, Justice.

In 1996 and again in 2000, the General Assembly amended OCGA § 45-20-2 (15), which defines "unclassified service" as that term relates to the State Merit System. Ga. L. 1996, pp. 684, 687, § 2; Ga. L. 2000, pp. 1377, 1382, § 1. The effect of those amendments was to remove persons hired after July 1, 1996 from that class of employees whose employment is subject to the rules of the merit system, as

---

well to expand the definition of "unclassified service" to include those jobs created after that date and those persons who accepted employment in an unclassified position thereafter. Subsequently, two state employees and their union, Services Employees International Union, (hereinafter referred to collectively as Employees) filed suit in which they challenged the constitutionality of the statutes. They alleged that the amendments to OCGA § 45-20-2 (15) violate Art. IV, Sec. III, Par. I (b) of the Ga. Const. of 1983, which provides, in its entirety, that

> [t]he [State Personnel B]oard shall provide policy direction for a State Merit System of Personnel Administration and may be vested with such additional powers and duties as provided by law. State personnel shall be selected on the basis of merit as provided by law.

Employees specifically contended that Art. IV, Sec. III, Par. I (b) mandates a state merit system which, as a matter of constitutional law, must include such traditional features as tenure and appeal rights. However, after conducting a hearing, the trial court found that the amendments did not violate the constitutional provision. Employees appeal from that order of the trial court.

Employees place primary emphasis on the principle that, in construing Art. IV, Sec. III, Par. I, this Court must consider the intention of the framers and " 'ascertain the prior law, the mischief, and the remedy.' " *Clarke v. Johnson*, 199 Ga. 163, 166 (33 SE2d 425) (1945). However, that is only one of several applicable rules of constitutional construction, all of which must be given full and equal effect. Accordingly, we must presume that acts of the General Assembly are constitutional, and never declare them void " 'except in a clear and urgent case. . . .' [Cit.]" *Brugman v. State*, 255 Ga. 407, 414 (5) (339 SE2d 244) (1986). "Our duty is to construe and apply the Constitution as it is now written." *Buford v. Buford*, 231 Ga. 9, 12 (200 SE2d 97) (1973), overruled on other grounds, *Ledford v. Bowers*, 248 Ga. 804, 807 (2) (d) (286 SE2d 293) (1982). "[T]his Court must honor the plain and unambiguous meaning of a constitutional provision. [Cit.]" *Lowry v. McDuffie*, 269 Ga. 202, 206 (3) (496 SE2d 727) (1998). Where a constitutional provision " 'is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms. (Cits.)' [Cit.]" *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981).

For purposes of applying that principle upon which Employees rely most heavily, the relevant "prior law" for determining the intention of the framers of Art. IV, Sec. III, Par. I is "at will" employment.

However, all of the other applicable rules of constitutional construction must be applied to determine whether the "mischief" which that constitutional provision was intended to address was the elimination of the spoils system and whether the "remedy" contemplated therein was the creation, as a matter of constitutional law, of a merit system with features such as protection of employees from discharge without cause and a right to appeal adverse employment actions.

Tenure and the right to appeal certainly can constitute features of a merit system. However, the language of Art. IV, Sec. III, Par. I does not make any mention of those features. Indeed, that constitutional provision does not, as Employees would seem to contend, create the State Merit System. Instead, as previously noted, it only creates a State Personnel Board, and then provides in subsection (b) that that

> [B]oard shall provide policy direction for *a* State Merit System of Personnel Administration and may be vested with such additional powers and duties as provided by law. State personnel shall be selected on the basis of merit *as provided by law*. (Emphasis supplied.)

Clearly, the selection of state employees based upon merit is "as provided by law," not as set forth in that provision of our Constitution. Thus, Art. IV, Sec. III, Par. I creates a State Personnel Board with authority to direct the policy of "a" State Merit System, but it leaves it to the General Assembly to actually create the State Merit System by enactment of laws regarding the selection of state personnel based upon merit.

Since, by its unambiguous terms, Art. IV, Sec. III, Par. I does not purport to create a State Merit System, a denomination of that provision as our constitution's Merit System provision would be entirely misleading. Consistent with the mandate of Art. IV, Sec. III, Par. I (b), the State Merit System is itself a creation of statute. OCGA § 45-20-1 et seq. Had the framers intended to create, as matter of constitutional, rather than statutory, law, a State Merit System which included features such as tenure and the right of appeal, they could have so provided. See *McCafferty v. Medical College of Ga.*, 249 Ga. 62, 68 (287 SE2d 171) (1982) (constitutional provision granting Board of Regents " 'the powers and duties as provided by law existing at the time of the adoption of the Constitution of 1945 . . .' "), overruled on other grounds, *Self v. City of Atlanta*, 259 Ga. 78, 80 (1) (377 SE2d 674) (1989). However, they did not do so. Nothing in Art. IV, Sec. III, Par. I (b) can be construed as divesting the General Assembly of the authority to determine what rights and benefits accrue to state employees under the State Merit System. Under that provision, the State Personnel Board has the constitutional authority to provide

policy direction to the State Merit System created by the General Assembly, but the General Assembly retains the exclusive power to determine the applicable legal parameters within which the Board exercises its authority over policy. "The State Personnel Board is authorized to adopt, with the approval of the Governor, rules and regulations *to effectuate the state merit system.*" (Emphasis supplied.) *Clark v. State Personnel Bd.*, 252 Ga. 548, 550 (3) (314 SE2d 658) (1984).

Thus, the "remedy" for the "mischief" of the spoils system is clearly not Art. IV, Sec. III, Par. I. Instead, the "remedy" for that "mischief" is OCGA § 45-20-1 et seq., enacted by the General Assembly pursuant to its authority under that constitutional provision to legislate with regard to the selection of state employees based upon merit. " 'It is the "spoil[s] system" that Civil Service desires to eradicate. . . .' [Cit.] We believe that the *Georgia Merit System Law* ([cit.]) was enacted with the same purpose as other *civil service legislation* in this country. . . ." (Emphasis supplied.) *Scott v. Undercofler*, 108 Ga. App. 460, 463 (133 SE2d 444) (1963).

> We have repeatedly held that *legislation* providing systems for public employment [is] subject to amendment or even repeal. [Cits.] The *Merit System Act* was never intended as protection of positions. It is instead *legislation* which provides a system for a more stable government administered by persons who are protected from political whim. It therefore amounts to a system which protects people and not positions. (Emphasis supplied.)

*Clark v. State Personnel Bd.*, supra at 550 (2) (b). Accordingly, any protection provided for state employees is exclusively a function of legislation, not the Constitution. In the absence of a constitutional amendment which creates a State Merit System and which sets forth enumerated rights for state employees, the determination of how best to "remedy" the "mischief" of the spoils system is a matter which Art. IV, Sec. III, Par. I leaves entirely for the General Assembly.

> Where the natural and reasonable meaning of a constitutional provision is clear and capable of a "natural and reasonable construction" ([cit.]), courts are not authorized either to read into or to read out that which would add to or change its meaning.

*Foster v. Brown*, 199 Ga. 444, 460 (34 SE2d 530) (1945) (On Motion for Rehearing).

In upholding the constitutionality of the 1996 and 2000 statutes, the trial court adhered to the full complement of applicable rules of construction. The contrary construction of Art. IV, Sec. III, Par. I advanced by Employees would require that we read into that provision a completely fictitious limitation on the General Assembly's constitutional power to legislate in matters regarding the State Merit System. Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed. Hunstein, P. J., Thompson and Hines, JJ., concur. Sears, C. J., Benham, J., and Judge Louisa Abbot dissent. Melton, J., not participating.*

BENHAM, Justice, dissenting.

A majority of this Court has approved today of legislative action which effectively repeals a constitutional provision without taking the approved course of submitting to the people the question whether they wished to have their constitution changed. Together, the statutory amendments at the heart of this case have the effect of destroying the system of personnel administration which has safeguarded state employees and state government from whim and political influence since 1943 and which has been a matter of constitutional law since 1945. The "spoils system," which the Merit System Provision of the Georgia Constitution was intended to counter, has been invited back into our state government by a combination of unconstitutional legislative action and the refusal of a majority of this Court to recognize and give effect to the intent of the framers of the 1945 Constitution.

Because the net effect of the legislation at issue here is to remove every position in State government from coverage under the Merit System and, thus, to eliminate as an element of government employment such protections as discharge from employment only for cause (tenure) and the right to appeal adverse employment actions, the central question in this case is whether the "State Merit System" mandated in Art. IV, Sec. III, Par. I (b) of our Constitution must, as a matter of constitutional law, include such traditional features of a merit system as tenure for employees and appeal rights. "In determining the meaning of a provision of the Constitution, due consideration should be given to the intention of its framers." *Houlihan v. Saussy*, 206 Ga. 1, 3 (55 SE2d 557) (1949). We believe the trial court, in seeking to apply that principle, focused its consideration of the intent of the framers too narrowly, resulting in an erroneous conclusion regarding the intent of the framers of our Constitution's Merit System Provision. The majority compounds the error by ignoring the intent entirely. Contrary to the trial court's holding and the hypertechnical construction created by the majority on this appeal, I

believe the framers did intend to establish as a matter of constitutional law a merit system with features such as protection of employees from discharge without cause and a right to appeal adverse employment actions.

In *Clarke v. Johnson*, 199 Ga. 163, 166 (33 SE2d 425) (1945), this Court quoted approvingly from a treatise as follows:

> "In placing a construction on a constitution or any clause or part thereof, a court should look to the history of the times and examine the state of things existing when the constitution was framed and adopted, in order to ascertain the prior law, the mischief, and the remedy. A constitutional provision must be presumed to have been framed and adopted in the light and understanding of prior and existing laws and with reference to them. Constitutions, like statutes, are properly to be expounded in the light of conditions existing at the time of their adoption." [Cit.]

Applying that principle, which is consistent with the reminder in OCGA § 1-3-1 (a) to keep "in view at all times the old law, the evil, and the remedy," we must consider in ascertaining the intent of the framers of the Merit System Provision the context in which it was originally made a part of the 1945 Constitution and answer the question posed in *Clarke v. Johnson*, supra: "What were the circumstances and conditions existing at the time of the adoption of the [provision] now being construed?"

The prior law to be considered was "at will" employment, terminable by the employer without cause. OCGA § 34-7-1 ("An indefinite hiring may be terminated at will by either party."). The mischief, or "[t]he evil which the constitutional provision . . . intended to remedy" (*Turman v. Cargill & Daniel*, 54 Ga. 663 (3) (1875)), was the "patronage" or "spoils" system[1] in which government jobs were awarded as favors or rewards to supporters of those in power. The remedy was a

---

[1] The designation of a patronage system as a "spoils" system may stem from the remarks of William Learned Marcy who, as a senator from New York, spoke in the United States Senate on January 25, 1832, defending the appointment of Martin Van Buren as Minister to England against an attack from Senator Henry Clay:

> It may be, sir, that the politicians of the United States are not so fastidious as some gentlemen are, as to disclosing the principles on which they act. They boldly preach what they practise. When they are contending for victory, they avow their intention of enjoying the fruits of it. If they are defeated, they expect to retire from office. If they are successful, they claim, as a matter of right, the advantages of success. They see nothing wrong in the rule, that to the victor belong the spoils of the enemy.

Register of Debates in Congress, vol. 8, col. 1325, quoted in Respectfully Quoted: A Dictionary of Quotations Requested from the Congressional Research Service, Platt, Suzy, ed., Library of Congress, n.d., 1989; http://www.bartleby.com/73/1314.html.

constitutional amendment mandating merit system legislation, "giving public employees tenure in office and the right to notice and hearing upon discharge for cause. . . . 'It is the "spoil system" that Civil Service desires to eradicate.' [Cit.] We believe that the Georgia Merit System Law ([cits.]) was enacted with the same purpose as other civil service legislation in this country." *Scott v. Undercofler*, 108 Ga. App. 460, 462-463 (133 SE2d 444) (1963).

The federal government led the way in reforming public employment, putting in place a civil service based on merit principles in 1883, shortly after President James A. Garfield was assassinated by a dissatisfied officer-seeker. *Arnett v. Kennedy*, 416 U. S. 134, 148-149 (94 SC 1633, 40 LE2d 15) (1974). Although the provisions of that first "merit system" act were minimal, dealing primarily with entry into government service, the concept had evolved by 1913 into a system that included tenure and appeal rights. Id. That system spread to state governments by means of amendments to the Social Security Act in 1939 requiring states receiving federal funds for certain programs to establish merit systems. See *State ex rel. Hennepin County Welfare Bd. v. Fitzsimmons*, 239 Minn. 407 (58 NW2d 882) (1953). The minimal standards promulgated by the Social Security Board for those state merit systems included selection of employees on the basis of merit, removal from employment only for cause, and the right to appeal removal from employment. Social Security Administration, Social Security in Review, 2 Social Security Bulletin 9 (Sept. 1939). Georgia complied with the requirements of the Social Security Act by enacting in 1943 the Merit System Established Act. Ga. L. 1943, pp. 171-177. That act, which specified that the rules of the Merit System were to conform to the minimum standards established by the federal government (id. at 174), called for the creation of "a merit system of personnel administration" and specifically provided for employee tenure and appeal rights.

Consideration of the context in which the Merit System Provision of our Constitution was enacted points irresistibly to the conclusion that when the framers of the 1945 Constitution's Merit System Provision used the term "Merit System," they referred specifically to the system Georgia had put in place two years earlier for the expressed purpose of meeting the requirements of the Social Security Act. That is to say, the framers incorporated into the Constitution the already established provisions of the 1943 Merit System Established Act and the federal standards promulgated by the Social Security Act, including such essential elements as employee tenure and appeal rights.

The State put forth several arguments in support of the trial court's decision, but all those arguments were premised on ignoring the meaning of the phrase "Merit System" as it was understood by the

framers when they made it part of our Constitution. The State's argument that the amendments at question do not abolish the Merit System elevates form over substance. While the amendments leave in existence something named "Merit System," the effect of the legislation is unquestionably to remove from that system the basic elements understood by the framers of the Merit System Provision such as employee tenure and appeal rights. The argument advanced by the State and adopted by a majority of this Court that the legislation at issue here is valid because the constitutional Merit System Provision does not expressly limit the General Assembly's authority to define the Merit System likewise overlooks the historical context. As we noted above, the term "Merit System" had a clear meaning when the framers used it in 1945, and any attempt to define "Merit System" in a manner conflicting with that meaning amounts to a "clear and palpable conflict" with the Merit System Provision. See *Cobb County v. Campbell*, 256 Ga. 519 (350 SE2d 466) (1986) (legislation will be upheld as constitutional unless conflict with Constitution is clear and palpable). Finally, the State makes much of the failure of the framers to include specific details controlling how a merit system should be established, but again fails to take into account that there are basic elements inherent in the designation "merit system" of which the framers of the Merit System Provision were well aware and which were, accordingly, incorporated into the constitutional provision. As was noted above, those elements include employee tenure and appeal rights. While the legislature plainly has authority to determine how those elements are to be implemented in Georgia's version of a merit system, their inclusion in the basic concept adopted into the Constitution prevents the legislature from eliminating them other than by constitutional amendment. Because the legislation at question in this appeal removed those elements, it is in conflict with the Constitution. The majority opinion in this case largely ignores this issue, depending instead on a technical analysis that ignores the intent of the framers and the rights of the people to control their own Constitution.

The trial court's rejection of Employees' argument that the Merit System Provision of the 1945 Constitution was intended to incorporate, by use of the term "Merit System," the existing elements of a merit system was based on several flawed premises. Firstly, the trial court's holding that the absence of certain words such as "tenure" and "appeal rights" establishes that the framers did not intend to include the essential elements of a merit system was, as noted above, based on too narrow a consideration of the intent of the framers. As discussed in the preceding paragraphs, the use of the term "Merit System" was, in the context of the development of merit systems as a federal mandate, sufficient to bring into the Merit System Provision

the elements of the type of merit system required by the Social Security Board's implementation of the 1939 amendments to the Social Security Act, including tenure and appeal rights.

Secondly, the trial court demonstrated a basic misunderstanding of the origin of the Merit System Provision by stating that the "1945 Constitutional Revision Commission considered and rejected more detailed drafts of the 1945 Merit System Provision in favor of the more general provision actually adopted. . . ." Included in the record of this case are portions of the "Records of the Commission of 1943-1944 to Revise the Constitution of Georgia," which show the provision the Commission sent to the legislature was not that eventually adopted, but was instead one which placed control of the merit system in the legislature. Also in the record are portions of the Senate and House Journals of 1945 showing that the Merit System Provision actually adopted was one originating in the Senate and including provision for a "State Merit System." Rather than supporting the trial court's conclusion, the record supports the argument advanced by Employees that the framers intended to "constitutionalize" the concept of a merit system as it then existed.

Thirdly, the trial court's ruling that Georgia's first merit system legislation, the Merit System Established Act, was not "frozen" into the Constitution relies solely on the method for incorporating statutory provisions into the Constitution recognized in *McCafferty v. Medical College of Ga.*, 249 Ga. 62 (287 SE2d 171) (1982), overruled on other grounds in *Self v. City of Atlanta*, 259 Ga. 78 (1) (377 SE2d 674) (1989). In *McCafferty*, a provision in the 1945 Constitution providing that the Board of Regents "shall have the powers and duties as provided by law existing at the time of the adoption of this Constitution . . ." was recognized by this Court as incorporating into the Constitution previous legislation on the subject. Id. at 67. That case did not hold, however, that the method used there was the only method for constitutionalizing existing law. As we noted above, consideration of the historical record compels us to conclude the framers of the Merit System Provision intended to incorporate into the Constitution the basic elements of the concept of merit systems as previously enacted in the Merit System Established Act. Again, the majority opinion in this case ignores these matters entirely in favor of an analysis more concerned with the use of "a" rather than "the" in the Merit System Provision, permitting the legislature to change by its own action what it should have submitted to the people as a constitutional amendment.

Finally, the trial court's reliance on this Court's decision in *Clark v. State Personnel Bd.*, 252 Ga. 548 (314 SE2d 658) (1984), was misplaced. The trial court cited that decision for the proposition that the legislature has authority to remove positions from the coverage of

the Merit System, and relied on that proposition to support its conclusion that no conflict exists between the Merit System Provision of the Constitution and the legislation at issue in this case. However, the trial court's conclusion is based on a misconception of the constitutional questions presented in *Clark*. This Court's holding in *Clark* was that a legislative amendment to the Merit System Act removing a department's highest Merit System position from the Merit System did not constitute forbidden special legislation (id., Div. 1) and did not unconstitutionally impair the employees' contractual rights (id., Div. 2). No consideration was given in *Clark* to a conflict between the legislation and the Merit System Provision. In addition to the legal distinction between the decision in *Clark* and the present case, the factual difference between this case and *Clark* renders it distinguishable: *Clark* dealt with the removal of a single leadership position in the Department of Public Safety from the coverage of the Act while the present case deals with the dissolution of the Merit System itself. Given this Court's recognition in *Clark* of the Merit System as an institution which "provides a system for a more stable government administered by persons who are protected from political whim," (id. at 550), that decision cannot fairly be cited as authority in support of legislation which will bring an end to the Merit System for all practical purposes. A change in the coverage of a particular leadership position is consistent with the general concept of a civil service based on a merit system which protects

> lower level employees, who exercise little or no discretion in matters of public policy, from having their jobs depend on the whims of elected officials, while leaving higher level managers, who exercise much more discretion, unprotected, and thus more responsive and accountable to political events, elected officials, and, ultimately, the electorate.

(Footnotes omitted.) 15A AmJur2d 28, 29, Civil Service, § 16. Removal of all positions from the coverage of the merit system cannot be justified under either that principle or this Court's decision in *Clark*.

This Court's decision today does harm to our state government in several ways. First, it endorses the choice of the legislature to deprive the electorate of its right to control the Constitution, avoiding the uncertain process of constitutional amendment by legislation that undoes the constitutional action taken by the people in ratifying the 1945 Constitution and its successors. Second, it deprives state employees of a system of protection against arbitrary decisions in personnel actions which has been in place for more than half a century. Last, it deprives the people of Georgia of the only system of personnel administration that has increased the effectiveness of

state government. "The historical and fundamental purpose of the civil service and its merit system principles is to insulate the state work force from political influence so as to improve the effectiveness and efficiency of state government." *Vermont State Employees' Assn. v. Vermont Criminal Justice Training Council*, 167 Vt. 191, 198 (704 A2d 769) (1997). The legislature's destruction of the State Merit System, and this Court's endorsement of that destruction, invite the return of a system based on whim and political influence. I fear that action will provide unwanted opportunities to recall the wisdom of the American philosopher George Santayana: "Those who cannot remember the past are condemned to repeat it." The Life of Reason, Vol. 1, 1905.

I am authorized to state that Chief Justice Sears and Judge Louisa Abbot join in this dissent.

DECIDED MARCH 27, 2006 —
RECONSIDERATION DENIED APRIL 13, 2006.

*John R. Myer, Michael E. Kramer, Carol R. Golubock*, for appellants.

*Thurbert E. Baker, Attorney General, Bryan K. Webb, Kathleen T. Gosden, Assistant Attorneys General*, for appellees.