**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1710**

TRAVCO INSURANCE COMPANY,

             Plaintiff – Appellee,

        v.

LARRY WARD,

             Defendant – Appellant.

------------------------------

NATIONAL ASSOCIATION OF HOME BUILDERS,

             Amicus Supporting Appellant,

NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES; AMERICAN
INSURANCE ASSOCIATION,

             Amici Supporting Appellee.


Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.   Robert G. Doumar, Senior
District Judge.  (2:10-cv-00014-RGD-TEM)


Argued:  September 20, 2011          Decided:  March 1, 2012


Before SHEDD and WYNN, Circuit Judges, and Damon J. KEITH,
Senior Circuit Judge of the United States Court of Appeals for
the Sixth Circuit, sitting by designation.


Unpublished Order of Certification of a question of law to the
Supreme Court of Virginia.

---

**ARGUED:** Michael Francis Imprevento, BREIT DRESCHER IMPREVENTO & WALKER, PC, Norfolk, Virginia, for Appellant. Stephen Edward Goldman, ROBINSON & COLE LLP, Hartford, Connecticut, for Appellee. **ON BRIEF:** Jeffrey A. Breit, John W. Drescher, BREIT DRESCHER IMPREVENTO & WALKER, PC, Norfolk, Virginia; Richard J. Serpe, LAW OFFICES OF RICHARD J. SERPE, PC, Norfolk, Virginia, for Appellant. John B. Mumford, Jr., Kathryn E. Kransdorf, HANCOCK, DANIEL, JOHNSON & NAGLE, PC, Glen Allen, Virginia; Wystan M. Ackerman, Daniel F. Sullivan, Jamie M. Landry, ROBINSON & COLE LLP, Hartford, Connecticut, for Appellee. David S. Jaffe, NATIONAL ASSOCIATION OF HOME BUILDERS, Washington, D.C., for National Association of Home Builders, Amicus Supporting Appellant. Thomas W. Curvin, Amy K. Averill, SUTHERLAND ASBILL & BRENNAN LLP, Atlanta, Georgia; Steuart H. Thomsen, SUTHERLAND ASBILL & BRENNAN LLP, Washington, D.C., for National Association of Mutual Insurance Companies, Amicus Supporting Appellee. Raoul G. Cantero, Michelle Holmes Johnson, WHITE & CASE LLP, Miami, Florida, for American Insurance Association, Amicus Supporting Appellee.

---

PER CURIAM:

Larry Ward ("Ward") appeals from an order granting summary judgment in favor of the issuer of his homeowners insurance policy, Travco Insurance Company ("Travco"), and declaring that he is not entitled to coverage for damages to his home allegedly caused by the drywall used therein. Although the district court found that Ward had suffered a loss within the policy's coverage, it also concluded that coverage was excluded by four provisions: the latent defect exclusion, the faulty material exclusion, the corrosion exclusion, and the pollution exclusion.

Pursuant to the Supreme Court of Virginia's Rule 5:40, we now certify the following question of Virginia law to the Supreme Court of Virginia:

> 1. For purposes of interpreting an "all risk" homeowners insurance policy, is any damage resulting from this drywall unambiguously excluded from coverage under the policy because it is loss caused by:
>
>> (a) "mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage itself";
>>
>> (b) "faulty, inadequate, or defective materials";
>>
>> (c) "rust or other corrosion"; or
>>
>> (d) "pollutants," where pollutant is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste?

3

This court acknowledges that the Supreme Court of Virginia may restate this question. See Va. Sup. Ct. R. 5:40(d).

Counsel of record for Larry Ward is Michael F. Imprevento, Jeffrey A. Breit, and John W. Drescher, Breit Drescher, Imprevento & Walker, PC, 1000 Dominion Tower, 999 Waterside Drive, Norfolk, Virginia, 23510; and Richard J. Serpe, Law Offices of Richard J. Serpe, PC, 580 East Main Street, Suite 310, Norfolk, Virginia, 23510. Counsel of record for Travco Insurance Company is John B. Mumford, Jr. and Kathryn I. Kransdorf, Hancock Daniel Johnson & Nagle, P.C., 4701 Cox Road, Suite 400, Glen Allen, Virginia, 23060; and Stephen E. Goldman, Wystan M. Ackerman, Daniel F. Sullivan, and Jamie M. Landry, Robinson & Cole LLP, 280 Trumbull Street, Hartford, Connecticut, 06103.

I

The underlying facts of this appeal are undisputed. On May 1, 2007, Ward purchased a newly constructed home located in Virginia Beach (the "Residence"). On May 7, 2007, Travco issued an "all risk" homeowner's insurance policy (the "Policy") for the Residence. The Policy initially covered the Residence from May 7, 2007 to May 7, 2008; Ward twice renewed the Policy, extending his coverage to May 7, 2010.

The Policy "insure[s] against risk of direct physical loss to property described in [the Policy]." J.A. 38. The Policy does

4

not define "direct physical loss"; however, it does define "Property Damage" as "physical injury to, destruction of, or loss of use of tangible property." J.A. 32. In addition, the Policy also contains several exclusions, four of which are relevant here. Under these four exclusions, the Policy excludes from coverage any damage to the Residence caused by:

> (1) "Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself." J.A. 38.

> (2) "Faulty, inadequate or defective: . . . Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; Materials used in repair, construction, renovation or remodeling; or Maintenance; of part or all of any property whether on or off the 'residence premises'." J.A. 42.

> (3) "Smog, rust or other corrosion, mold, fungi, wet or dry rot." J.A. 38.

> (4) "Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." J.A. 38.

The Residence contains walls that were constructed using Chinese-manufactured drywall.[1] Over time, the drywall released

---

[1] Apparently, within the building industry, this type of drywall is commonly referred to as "Chinese drywall" because of its place of origin.

5

sulfuric gas into the Residence, allegedly creating noxious odors and causing damage and corrosion to its structural, mechanical, and plumbing systems.[2] Eventually, the Residence became uninhabitable, and Ward and his family were forced to move.

II

Ward filed a lawsuit in Virginia state court on August 10, 2009, against the development and supply companies who constructed the Residence.[3] In addition, Ward reported an insurance claim to Travco on September 23, 2009, seeking coverage under the Policy for the damages allegedly caused by the drywall. On January 7, 2010, Travco sent Ward a letter denying coverage for his claims. On the same day, Travco filed a declaratory judgment action in federal court seeking a

---

[2] The alleged damaged components of the Residence include the framing, heating, HVAC units, refrigeration coils, copper tubing, faucets, metal surfaces, electrical wiring and computer wiring. It also includes personal and other property, such as microwaves, utensils, electronic appliances, jewelry, televisions, and other household and personal items.

[3] That suit is captioned Ward v. Peak Building Corp., and is currently part of a multi-district litigation pending in the Eastern District of Louisiana. See In re Chinese-Manufactured Drywall Prods. Liability Litig., MDL No. 2047, 626 F. Supp. 2d 1346 (J.P.M.L. June 15, 2009). Along with his answer to the declaratory judgment complaint, Ward also filed a motion to transfer the action to the United States District Court for the Eastern District of Louisiana. The motion to transfer was denied.

declaration that it had no obligation under the Policy to provide coverage for any losses allegedly caused by the drywall. Prior to discovery, Travco filed a motion for summary judgment, arguing the Residence had not sustained a direct physical loss and therefore did not fall within the grant of coverage in the Policy. In the alternative, Travco asserted that even if there was a direct physical loss to the Residence, this loss was excluded from coverage under the faulty materials, latent defect, corrosion, and pollution exclusions.

Following a hearing, the district court entered an order granting in part and denying in part Travco's motion for summary judgment. As an initial matter, the district court found that Ward's Residence did suffer a direct physical loss, concluding that "direct physical loss" includes "total loss of use" and that physical damage to the property is not necessary when "the building in question has been rendered unusable by physical forces." J.A. 697-98.

However, despite finding that Ward had met his burden of bringing himself within the coverage of the Policy, the district court also found that each of the four relevant exclusions unambiguously applied to operate as a bar to coverage under the Policy. First, the district court found the damage to the Residence was a loss caused by a latent defect. The court relied specifically on Glens Falls Ins. Co. v. Long, 77 S.E.2d 457, 459

7

(Va. 1953), and U.S. West, Inc. v. Aetna Cas. & Sur. Co., 117 F.3d 1415 (4th Cir. July 16, 1997) (unpub. table op.), in defining a latent defect as one that is "not readily discoverable" and is also "integral to the damaged property's design or manufacture or construction." J.A. 701-02. Although the district court acknowledged that "[i]n a certain sense, the Drywall is not 'damaged property' at all, and thus its defects cannot be latent defects within the meaning of U.S. West," it also concluded that Ward cannot claim to have suffered a "direct physical loss" under the Policy while simultaneously claiming the relevant property remains undamaged. J.A. 701-02. Therefore, the district court concluded that even though the drywall was damaging other components of the Residence, because the flaw in the drywall was undetectable and the drywall was integral to the Residence's maintenance and construction, the loss from defective drywall must fall within the latent defect exclusion. J.A. 702.

Second, the district court concluded that coverage is barred by the faulty materials exclusion. Relying on the ordinary meaning of "faulty" and "defective," the district court concluded that the faulty material exclusion applies even to property that may be serving its intended purpose because although the drywall in the Residence had not collapsed or

8

physically deteriorated, it was not serving its intended purpose as a component of a livable residence.[4] J.A. 704.

Third, the district court determined that coverage for loss caused by corrosion is barred by the corrosion exclusion. Although "corrosion" is not defined in the Policy, the district court found the exclusion applied because the ordinary meaning of corrosion includes the "action or process of corroding" and that the damage to the structural, mechanical and plumbing systems in the Residence was caused by the "action or process of corroding." J.A. 707. Moreover, in light of the weight of authority in other jurisdictions, the district court found that the exclusion precludes recovery for damages caused by corrosion regardless of what caused the corrosion or how suddenly it occurred. J.A. 707.

Finally, the district court found the pollution exclusion also applied. While acknowledging that pollution exclusions are frequently litigated and that there is a split of authority as to the breadth of pollution exclusions, the district court concluded that, "[u]nder Virginia law, pollutant exclusions are not limited to 'traditional environmental pollution.'" J.A. 711. In reaching this conclusion, the district court relied on City

---

[4] The district court noted that Ward described the drywall as "inherently defective" in his state court complaint. J.A. 705.

9

of Chesapeake v. States Self-Insurers Risk Retention Group, Inc., 628 S.E.2d 539 (Va. 2006), in which the Supreme Court of Virginia found that a pollution exception applied to the release of toxic trihalomethanes into a municipal water supply. Although the district court acknowledged that City of Chesapeake involved traditional environmental pollution, it found that the Court's holding was not expressly limited to traditional environmental pollution and it "decline[d] this invitation to second-guess the Virginia Supreme Court." J.A. 710 (citing Firemen's Ins. Co. v. Kline & Son Cement Repair, Inc., 474 F. Supp. 2d 779 (E.D. Va. 2007) (finding that coverage for injuries caused by the release of epoxy fumes is barred by the pollution exclusion)). Thus, the district court concluded that the exclusion applies because the drywall discharged or dispersed sulfuric gas and that gas plainly qualifies as irritants, contaminants, or fumes. J.A. 712-13.

In light of its conclusions, the district court entered declaratory judgment that the Policy does not provide coverage for the damages presently claimed by Ward, but denied Travco's request for a declaratory judgment that the Policy does not cover any subsequent secondary but as-yet-unclaimed losses. J.A. 717.

10

III

On appeal, Ward contends the district court erred in holding that the Policy exclusions barred coverage for his claimed losses. Under Virginia law, courts interpret insurance policies in accordance with the intent of the parties as determined from the words used in the policy. Copp v. Nationwide Mut. Ins. Co., 692 S.E.2d 220, 223 (Va. 2010). Moreover,

> Insurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders. The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer.

St. Paul Fire & Marine Insurance Co. v. S.L. Nusbaum & Company, Inc., 316 S.E.2d 734, 736 (Va. 1984). When an insurer seeks to limit coverage under a policy, language of the exclusion must be "reasonable, clear, and unambiguous." Virginia Farm Bureau Mut. Ins. Co. v. Williams, 677 S.E.2d 299, 302 (Va. 2009). The language of an insurance policy "is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time." Williams v. Commonwealth Real Estate Bd., 698 S.E.2d 917, 925 (Va. Ct. App. 2010) (quoting Eure v. Norfolk Shipbuilding & Drydock Corp., 561 S.E. 2d 663, 668 (Va.

11

2002). If there is any doubt, ambiguous language in an insurance policy will be given an "interpretation which grants coverage, rather than one which withholds it." St. Paul Fire, 316 S.E.2d at 736.

Ward contended below and continues to contend on appeal that Travco failed to meet its burden of establishing that the exclusions apply. See Allstate Ins. Co. v. Gauthier, 641 S.E.2d 101, 104 (Va. 2007) (noting the burden is on insurer to prove applicability of exclusion). In particular, Ward argues the language in each of the exclusions at issue in Travco's policy is not clearly or unambiguously defined, and the broad, expansive interpretations ascribed to those exclusions by Travco and the district court are therefore unreasonable. Moreover, Ward argues his claimed losses were unexpected, fortuitous, and extraneous, and are the very types of events for which a reasonable homeowner would purchase insurance coverage. According to Ward, because each of the four exclusions is ambiguous, the district court erred in interpreting them in such as way as to limit, rather than provide, insurance coverage for his losses.

Ward likewise makes specific arguments regarding each exclusion. With regard to the latent defect exclusion, Ward argues that "latent defect" is susceptible to multiple meanings, as illustrated both on the face of the Policy and in case law.

12

First, the term "latent defect" is qualified in the Policy by the modifier "that causes it to damage or destroy itself." J.A. 38. Thus, Ward argues the term must mean something more than merely a defect that is undetectable or undiscoverable. Moreover, Ward notes the apparent conflict between Glen Falls and U.S. West as to the meaning of "latent defect." Compare Glen Falls, 77 S.E.2d at 459 (defining latent defect as one "which reasonably careful inspection will not reveal"), with U.S. West, 117 F.3d at *5 ("Not every defect that is not readily discoverable is a 'latent' one; only those not readily discoverable that also are integral to the damaged property's design or manufacture or construction fit that description.").

Ward also notes that the history of the latent defect exclusion, as well as the insurance industry's own definition of "latent defect," indicates that the latent defect exclusion was intended to apply to "a loss due to any quality in the property that causes property to damage or destroy itself." See Finger v. Audubon Ins. Co, No. 09-8071, 2010 WL 1222273, slip op. at 6 (La. Civ. Dist. Ct. Mar. 22, 2010) (emphasis added) (citation omitted). In other words, Ward argues the exclusion was intended to prevent an insurer from providing coverage over property that "has its own shelf life and will eventually wear out or break down because of intrinsic quality or nature." Id. (citation omitted). In light of this, Ward argues the latent defect

13

exclusion is inapplicable here because the drywall is not structurally inferior, has not deteriorated or destroyed or damaged itself, and has not failed to serve its intended purpose.[5]

With regard to the faulty materials exclusion, Ward argues the term "faulty material" is ambiguous, and that the exclusion is inapplicable here because of the unique nature of the "defect" in the drywall, to wit: even while the drywall emits sulfuric gasses that destroy other components of the residence, it continues to serve its intended purpose as a wall and divider and does not deteriorate or breakdown. In other words, the drywall is not subject to the faulty material exception because it continues to serve its normal function and intended purpose as a structural element of the residence and has not caused damage to itself. See Finger, 2010 WL 1222273, slip op. at 8 ("Chinese drywall is not defective within the meaning of the [faulty material] exclusion."). Ward notes that the district court, in declining to follow Finger, did not rely on any

---

[5] The district court acknowledged that, "in a certain sense, the Drywall is not 'damaged property' at all, and thus its defects cannot be latent defects within the meaning of U.S West." J.A. 701. Further, the district court noted the latent defect exclusions are "historically related to wear and tear exclusions, which do exclude coverage for inevitable and predictable loss over time." J.A. 702.

14

particular Virginia precedent but rather on the decisions of other circuits.

With regard to the corrosion exclusion, Ward argues that his loss is the actual corrosion of the metals caused by the sulfuric gases rather than any subsequent damage to any other part of the Residence otherwise resulting from this corrosion. He argues that the loss is not caused by another house component which damaged the house after it had been corroded; rather, the damage is the corrosion itself. See Finger, 2010 WL 1222273, slip op. at *6. Ward contends that corrosion exclusions in insurance policies are generally intended to apply to maintenance related problems, such as the expected and natural occurrence of corrosion which causes damage to property over time, see Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Continental Ins. Co., 891 F.2d 772, 777 (10th Cir. 1989) ("[T]he corrosion exclusion applies only to naturally occurring corrosion."), and that the chemical reaction resulting from the drywall emissions is not the normal, anticipated corrosion referenced in the exclusion.[6]

---

[6] Ward also cites the Fire, Casualty & Surety Bulletin ("FC&S Bulletin"), an insurance industry publication which provides expert analysis on insurance policy interpretation. According to the FC&S Bulletin, "the intent of the corrosion exclusion is to exclude corrosion that is part of the normal aging process. The corrosion that results from the [Chinese] drywall is not part of a normal process and is directly related (Continued)

15

Finally, with regard to the pollution exclusion, Ward argues the meaning of "pollutant" is ambiguous under Virginia law. Ward argues the pollution exclusion was not intended to apply to product liability claims but was intended to limit or exclude coverage for past environmental contamination. Ward notes that although the district court relied on City of Chesapeake, it also acknowledged that City of Chesapeake involved traditional environmental pollution and that there is a split of authority as to the scope of pollution exclusions generally.[7] Ward argues this issue is controlled by Unisun Ins. Co. v. Schulwolf, 53 Va. Cir. 220 (Va. Cir. 2000), in which the Virginia Circuit Court declined to apply a pollution exception to lead paint, stating that "it is reasonable to conclude that the exclusion clause applies only to claims based on environmental pollution." Id. at *4. Ward argues that because

_____

to the vapors emitted from the drywall. Therefore, in our opinion, it would still be covered." Appellant Br. at 39 (quoting FC&S Online, Chinese Drywall and Corrosion, Questions and Answers, 2009, http://www.nationalunderwriterpc.com.

[7] The district court made clear it was not endorsing or rejecting City of Chesapeake as a matter of policy. Moreover, the district court acknowledged that Ward's interpretation of the pollution exclusion may be more consistent with precedent from other jurisdictions, public policy in reigning in overly broad exclusion clauses, and the historical development of the pollutant exclusion in insurance law, but that it was bound by City of Chesapeake unless and until the Supreme Court of Virginia holds otherwise. J.A. 712.

16

the gasses emitted from the drywall are not considered traditional environmental pollutants, the exclusion is inapplicable to a compound originating in and remaining within the Residence.[8]

IV

Several factors justify certification. Considering these arguments and with this legal background, we find no clear controlling Virginia precedent to guide our decision. There are no disputed fact issues, and the questions presented are pure questions of state law which have not been squarely addressed by the Supreme Court of Virginia. In addition, we recognize the importance of allowing the Supreme Court of Virginia to decide questions of state law and policy with such far-reaching impact. The question of how to interpret these standard exclusions, in light of the increasing number of insured homeowners who are seeking to recover under their first-party property insurance policies for losses resulting from the drywall, is a matter of exceptional importance for state insurers and insureds. In short, we are uncertain whether the Supreme Court of Virginia would conclude that each of these four exclusions is unambiguous

---

[8] We note that Ward raises an additional issue on appeal, namely, whether the Policy's "ensuing loss" provision restores coverage for damages caused to other components of the Residence. We do not certify this issue.

and reasonable in its form, scope, and application in light of the unusual nature of the losses involved, and the answer to this question is sufficiently unsettled and dispositive that certification is warranted.

Therefore, because no controlling Virginia appellate decision, constitutional provision, or statute appears to address the precise question presented in this case, and the answer to the certified question is potentially determinative of this appeal, the question is properly subject to review by the Supreme Court of Virginia on certification.

V

Accordingly, pursuant to the privilege made available by the Supreme Court of Virginia Rule 5:40, we respectfully hereby ORDER:

(1) that the question stated above be certified to the Supreme Court of Virginia for answer;

(2) that the Clerk of this Court forward to the Supreme Court of Virginia, under the official seal of this Court, a copy of this Order of Certification, together with the original or copies of the record before this Court to the extent requested by the Supreme Court of Virginia; and

(3) that the Clerk of this Court fulfill any request for all or part of the record simply upon notification from the Clerk of the Supreme Court of Virginia.

QUESTION CERTIFIED